892 So.2d 1115 (2004)
Robert A. MOLTER, Appellant,
v.
STATE of Florida, Appellee.
No. 2D03-4210.
District Court of Appeal of Florida, Second District.
November 17, 2004.
*1116 James Marion Moorman, Public Defender, and John C. Fisher, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Chandra Waite Dasrat, Assistant Attorney General, Tampa, for Appellee.
WALLACE, Judge.
Robert A. Molter challenges orders entered in the trial court requiring that he make restitution to his victims for stolen items in two separate cases. In Manatee Circuit Court case number 2002-CF-2212, we are required to reverse the two restitution orders and remand for a new evidentiary hearing because the amounts ordered were not supported by competent evidence. In case number 2002-CF-2214, we must reverse the restitution order and remand for entry of an amended order reflecting *1117 the amount that the State actually proved.

Case No. 2002-CF-2212

(The Henson Case)
The victims in case number 2002-CF-2212 were Todd Henson and Lisa Henson. They were not present at the restitution hearing. At the beginning of the hearing, the prosecutor produced two lists of the items for which the Hensons and State Farm, their insurance carrier, were seeking restitution. The prosecutor announced to the trial court that the amount due to the Hensons and State Farm as per their lists were $11,052.75 and $3379.15, respectively.
The trial court questioned Molter about the lists, and he initially agreed to the amounts claimed. However, defense counsel promptly objected to the amounts claimed, contending that the amounts reflected the replacement costs, not the fair market value at the time of the loss. Once Molter objected to the amount of restitution, the trial court was required to hear evidence on the matter. § 775.089(7), Fla. Stat. (2002); Smith v. State, 801 So.2d 1043, 1045 (Fla. 5th DCA 2001).
We must reject the State's contention that an evidentiary hearing was not required after Molter initially agreed to the amount. Defense counsel's objection occurred immediately after Molter spoke, and in response, the trial court inquired into the value of the items. Because the trial court recognized defense counsel's objection, we are required to do likewise.
Thereafter, the only evidence offered to prove the value of the items consisted of the unsworn, hearsay statements made by the prosecutor. Although Molter waived the hearsay objection by failing to raise it, the issue of the prosecutor's unsworn statements is another matter. In general, it is error to accept an attorney's unsworn assertions as evidence, subject to timely objection. See Blimpie Capital Venture, Inc. v. Palms Plaza Partners, Ltd., 636 So.2d 838, 840 (Fla. 2d DCA 1994) (noting the timely objection). However, in State v. Brugman, 588 So.2d 279, 280 (Fla. 2d DCA 1991), this court explained that when a court is required to hear evidence, an objection to an attorney's unsworn assertions is not needed when the attorney testifies as to facts outside his personal knowledge. The Brugman court distinguished Waste Management Inc. v. Florida Power & Light Co., 571 So.2d 507 (Fla. 2d DCA 1990), which upheld the necessity of an objection when the attorney made assertions to the court about procedural matters that were within the attorney's personal knowledge. In Brugman, however, the defendant's attorney supported a motion to dismiss, alleging entrapment, with nothing more than assertions about the case that lay beyond his personal knowledge. Because these assertions were unsworn, the court's order granting the dismissal was not supported by competent evidence, even though the State failed to object. Brugman, 588 So.2d at 280. We find Brugman controlling, requiring reversal, and we remand for a new restitution hearing.

Case No. 2002-CF-2214

(The Bennett Case)
The victims in case number 2002-CF-2214 were Jacob Bennett and Nicole Bennett. Both were present at the restitution hearing. At the beginning of the hearing, the prosecutor produced two lists prepared by the Bennetts of the stolen or missing items. The Bennetts had assigned a value to each of the items on the lists.
The trial court, the prosecutor, and Molter's counsel each had copies of the two lists prepared by the Bennetts. Although the lists are not a part of the record, the trial court and the other participants in the *1118 hearing treated them as evidence.[1] The main focus of the hearing was to test Molter's assertion that he did not steal some of the listed items and that the Bennetts were "lying" about those items.[2] The trial court used the witnesses' recitation of the items on the lists to identify the specific items about which Molter accused the Bennetts of lying. Valuation was a secondary concern, as the trial court was prepared to rely on the lists for the value of items that Molter admitted stealing from the Bennetts.
To affirm an order of restitution, there must be record evidence sufficient to support a finding that the State proved by a preponderance of the evidence the amount of restitution ordered. See § 775.089(7); Bass v. State, 873 So.2d 569, 570 (Fla. 2d DCA 2004). Apparently, the lists contained forty items. The Bennetts expressly identified only thirty-two items, and of these, a value was assigned for only twenty-two. Because the lists were not offered into evidence and are not a part of our record, the only evidence to support the order of restitution is the testimony of the Bennetts. Without any evidence as to the value of the other items, the State failed to carry its burden of proof to the extent the restitution order is based on unnamed and unvalued items. The prosecutor's unsworn assertions about the total value of the items listed are not evidence. Based upon our painstaking review of the transcript of the restitution hearing, we conclude that the State proved $8246 in required restitution  not $14,875 as the trial court ordered.
Although valuation was a secondary concern at the hearing, the trial court addressed it in some depth. The trial court responded to Molter's standing objection to the Bennetts' valuation of all the items, rejecting Molter's argument that the Bennetts' valuation was unreliable and that fair market value should be used. Molter also raised specific fair market value objections to the valuation of the stolen compact discs (CDs) and the man's Bulova watch.
As to the items that were expressly identified and valued, the trial court was within its discretion to reject fair market valuation of the stolen personal property. "[A] court is not tied to fair market value *1119 as the sole standard for determining restitution amounts, but rather may exercise such discretion as required to further the purposes of restitution." State v. Hawthorne, 573 So.2d 330, 333 (Fla.1991). Restitution serves not only to compensate the victim but also serves rehabilitative, deterrent, and retributive goals of the criminal justice system. Id. Most of the stolen items were jewelry, which reasonably can be viewed as the sort of family heirlooms for which fair market value could be inadequate to serve the purposes of restitution. See id. at 333 n. 4.
On appeal, Molter does not challenge the following nonjewelry items: savings bonds; mailbox and post; side door and lock; lost wages; and cash. With regard to the CDs and the man's Bulova watch, Molter is correct that fair market value rather than replacement cost is the standard for valuation. See Fletcher v. State, 800 So.2d 309 (Fla. 2d DCA 2001) (watch); Hagan v. State, 746 So.2d 1241 (Fla. 1st DCA 1999) (CDs). However, given the other purposes of restitution and the relatively small amount of money involved,[3] we conclude that as to these items it is appropriate to apply the legal maxim, de minimis non curat lex.[4] Molter's other arguments do not warrant discussion.

Conclusion
In case number 2002-CF-2212 (the Henson case), we reverse the orders of restitution and remand for a new evidentiary hearing. In case number 2002-CF-2214 (the Bennett case), we reverse the order of restitution and remand for the entry of an amended order requiring Molter to pay restitution to the Bennetts in the amount of $8246.
Reversed and remanded.
NORTHCUTT and STRINGER, JJ., concur.
NOTES
[1] The Bennetts referred to the lists many times during their testimony at the hearing. The trial court and counsel made repeated references to the lists. Nevertheless, because no one ever offered the lists in evidence, they are not available to us. This omission has made our review of this case more difficult than it would have been otherwise. We understand that the omission to offer the lists into evidence was undoubtedly an oversight. However, we take this occasion to remind counsel that if a witness is to testify about the contents of or by reference to a document, then the document must first be offered into evidence. Absent this elementary step, the document will not be part of the record that forms the basis for appellate review.
[2] The prosecutor informed the trial court at the beginning of the restitution hearing that the lists prepared in both the Henson and the Bennett cases had been provided to the defense several months prior to the hearing. Defense counsel did not dispute this assertion. Under these circumstances, we think the prosecutor and defense counsel ought to have conferred prior to the hearing in order to determine which items were uncontested and which items were in controversy. This would have promoted the efficient use of the trial court's limited resources and would have spared both the trial court and the other participants at the hearing in the Bennett case the tedious exercise of going through each of the numerous items on the two lists one by one. The trial court might consider requiring counsel to participate in such a prehearing conference as a prerequisite to scheduling a restitution hearing.
[3] The fourteen CDs were valued on the Bennetts' list at $15 each for a total of $210; the man's Bulova watch was valued at $350.
[4] "The law does not concern itself with trifles." Black's Law Dictionary 443 (7th ed.1999).